# United States Court of Appeals for the Federal Circuit

05-5142

REX SERVICE CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

ASSOCIATED AIRCRAFT MANUFACTURING & SALES INC.,

Defendant-Appellee.

Christopher M. Johnson, Centre Law, LLC, of Vienna, Virginia, argued for plaintiff-appellant. With him on the brief was James S. Phillips.

Kyle E. Chadwick, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director.

Bradley Alan Rush, John J. Fausti & Associates, LLC, of Washington, DC, argued for defendant-appellee Associated Aircraft Manufacturing & Sales Inc. On the brief were John J. Fausti and Monica C. Parchment.

Appealed from: United States Court of Federal Claims

Judge Francis M. Allegra

# United States Court of Appeals for the Federal Circuit

05-5142

REX SERVICE CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

ASSOCIATED AIRCRAFT MANUFACTURING & SALES INC.,

Defendant-Appellee.

_____

DECIDED:  May 8, 2006

_____

Before NEWMAN, MAYER, and GAJARSA, <u>Circuit Judges</u>.

MAYER, <u>Circuit Judge</u>.

Rex Service Corporation ("Rex") appeals the judgment of the United States Court

of Federal Claims, dismissing its post-award bid protest for lack of jurisdiction under the

Tucker Act, 28 U.S.C. § 1491(b)(1) (2002).[*]  Rex Serv. Corp. v. United States, No. 05-CV-386 (Fed. Cl. June 6, 2005).  Because Rex is not an "interested party" within the meaning of section 1491(b)(1), we affirm.

## Background

In July 2003, the Defense Supply Center, Columbus, a subagency within the Department of Defense, issued a request for proposals ("2003 RFP") to supply "thumbwheel switches," a component in aviation control transponders.  At that time, Rex was the sole approved source for providing the component.  On July 25, 2003, it filed an agency protest to the 2003 RFP, alleging that the department had disclosed some of Rex's proprietary data.  After reviewing the RFP, the department concluded that no data contained in it was proprietary.  Nevertheless, it canceled the 2003 solicitation.

In September 2004, the department issued a second RFP for "thumbwheel switches."  On November 2, 2004, one day before the close of bidding, Rex filed an agency protest to this RFP.  The protest alleged that department violations of the Procurement Integrity Act, 41 U.S.C. § 423, had prejudiced Rex, but did not prevent it from bidding, and further argued that any company who submitted a proposal using data from the 2003 RFP should be disqualified from bidding.  However, Rex did not submit a bid.  In January 2005, the department denied the protest, and Rex did not

[*]     28 U.S.C. § 1491(b)(1) provides:

> [The United States Court of Federal Claims] shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

(emphasis added).

05-5142                                  2

pursue the matter further. In February 2005, a contract was awarded under the 2004 solicitation to Associated Aircraft Manufacturing and Sales, Inc. ("Associated"), who had become an approved source for "thumbwheel switches" prior to the close of the solicitation period.

On March 21, 2005, Rex filed a bid protest under 28 U.S.C. § 1491(b)(1) in the Court of Federal Claims, challenging the contract award to Associated and alleging that the department had deviated from the process specified in the 2004 RFP. The trial court found that Rex was not an "interested party" within the meaning of section 1491(b)(1), and dismissed the complaint for lack of jurisdiction. Rex appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## Discussion

Whether a party has standing to sue is a question of law that we review de novo. See, e.g., Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1298 (Fed. Cir. 2001) ("AFGE"). The issue on appeal is whether Rex is an "interested party" within the meaning of the Tucker Act.

AFGE held that the term "interested party" in section 1491(b)(1) is construed in accordance with the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551-56. 258 F.3d at 1302. As such, the parties encompassed by that term are limited to "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. (adopting the language of section 3551(2)(A) of CICA) (emphasis added); see also Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1352 (Fed. Cir. 2004); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002). Relatedly, MCI

Telecommunications Corp. v. United States, 878 F.2d 362 (Fed. Cir. 1989), construed "interested party" in the Brooks Automatic Data Processing Act, 40 U.S.C. § 759 (repealed 1996) ("Brooks Act"), in accordance with CICA. Therefore, in light of the interrelatedness between section 3551(2)(A) of CICA and section 1491(b)(1) of the Tucker Act, as established by AFGE, and MCI and its progeny, the definition of "interested party" in the Brooks Act applies to the Tucker Act with equal force.

With these principles in mind, to come within the Court of Federal Claims' section 1491(b)(1) bid protest jurisdiction, Rex is required to establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest. See Myers, 275 F.3d at 1369 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing].")). With respect to the first element, Rex did not bid, and, therefore, it is not an "actual bidder." It argues, however, that it is a "prospective bidder," because, inter alia, it filed an agency protest prior to the close of bidding, and it was prejudiced, but not prevented from bidding, by alleged violations in the department's solicitation. These arguments are to no avail.

MCI held that "in order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." 878 F.2d at 365 (emphasis in original). Further, "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." Id. Here, because Rex could have bid, but chose not to, it cannot be considered a prospective bidder.

It is not relevant to Rex's status that it filed a pre-award agency protest, or that it alleges department "illegalities" prejudiced its ability to bid. It "could have [bid] for the contract award . . . and could have utilized the protest procedures available to an interested party to correct [the] deficiencies it perceived in the procurement process." Fed. Data Corp. v. United States, 911 F.2d 699, 705 (Fed. Cir. 1990). Similarly, we reject Rex's argument that it was a prospective bidder because it was a named source for "thumbwheel switches" and supplied the department with those parts under other contracts. This may have influenced its business decision not to submit a bid, but cannot overcome the failure to meet the prospective bidder requirements of MCI. In the end, Rex did not submit a bid; nor did it file a timely bid protest in the Court of Federal Claims, in which it established that it expected to bid prior to the close of the solicitation period, but was prevented from doing so on the basis of improper agency action. See generally MCI, 878 F.2d at 365.[**]

With respect to the second element of standing, Rex does not possess the requisite direct economic interest. To prove a direct economic interest as a putative prospective bidder, it is required to establish that it had a "substantial chance" of receiving the contract. See Myers, 275 F.3d at 1370; see also Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996) (providing that the "substantial chance" standard requires the protesting party to "establish not only some significant error in the procurement process, but also that there was a substantial chance it would

---

[**] We are not presented with, and do not decide, whether an agency protest, filed before the end of the solicitation period, that establishes the party expected to bid, but was prevented from doing so by improper agency action, may meet the requirements of MCI and secure prospective party status for a subsequent bid protest action.

have received the contract but for that error").  Because Rex did not bid, even if it could have prevailed on its objections before the trial court, and a reevaluation of the bids was ordered, it still would have no chance of securing the contract.  It does not argue that the department would be obligated to reopen the solicitation if its protest were allowed.

## Conclusion

Accordingly, the judgment of the United States Court of Federal Claims is affirmed.

## AFFIRMED