**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 12-1512

Robert L. Solze and Lois M. Dimitre, Petitioners,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Respondent.

Before MOORMAN, LANCE, and DAVIS, *Judges*.

**O R D E R**

On May 8, 2012, the petitioners, veteran Robert L. Solze and his daughter Lois M. Dimitre, in her capacity as attorney-in-fact pursuant to a durable power of attorney, filed a petition for extraordinary relief in the nature of a writ of mandamus seeking relief in relation to Mr. Solze's VA benefits and the Secretary's decision to appoint a fiduciary to manage those benefits on his behalf. On September 12, 2012, the parties presented oral arguments before this panel. On October 10, 2012, the Court issued an unpublished order resolving a number of motions and ordering the Secretary to show cause as to why he had not initiated an action in the appropriate state court to appoint a fiduciary for the veteran. The Secretary and the petitioners have since responded to that order. Based on the many filings made by the parties, the oral argument, and the discussion below, the Court will deny the petition for extraordinary relief.

**I. BACKGROUND[1]**

Mr. Solze served in the United States Marine Corps from May 1945 to January 1971 and retired as a lieutenant colonel. In July 2001, he executed a durable financial power of attorney (POA) that appointed his wife as his agent and Ms. Dimitre, one of his daughters, as his alternate agent if his wife were unable or unwilling to continue to serve as his agent. Petition (Pet.) Exhibit

---

[1] The Court repeats in large part the background section contained in its unpublished October 10, 2012, order. Because this matter comes before the Court on a petition instead of through the regular appeals process, the record before the Court is incomplete.

(Ex.) A. His wife died a short time later.[2] Pet. Ex. B. The POA expressly referenced the Maine Revised Statutes and "Maine case law" in describing the scope of the powers it granted. It also provided notice to the agent that, "As the Agent, you are under a duty (called a 'fiduciary duty') to observe the standards observed by a prudent person dealing with the property of another. The duty is explained more fully in the Maine Revised Statutes . . . and in Maine case law." *Id.* According to Ms. Dimitre, she has managed Mr. Solze's financial matters for over ten years. Mr. Solze lives with another daughter, Robbi Guillerault, who cares for him in her home.

In January 2011, VA found that Mr. Solze was entitled to benefits for a service-connected disability (ischemic heart disease), and it assigned him a 100% disability rating and a retroactive award of $10,692, presumably for the length of time between the date he submitted his claim and the date of the rating decision. This decision is not part of the record. VA issued a second rating decision in April 2011 finding Mr. Solze incompetent to manage his VA benefits due to vascular dementia. Neither Mr. Solze nor Ms. Dimitre challenged VA's proposal to find Mr. Solze incompetent; instead, they waived their due process right to a hearing on the matter of competency in response to VA's proposal to find Mr. Solze incompetent. *See* April 28, 2011, Rating Decision ("[Y]ou agreed with our proposed action and requested that a fiduciary be assigned to assist you in managing your VA benefits."). In May 2011, VA proposed to appoint a fiduciary to manage Mr. Solze's benefits. *See* Pet. Ex. C.

VA scheduled a field examination in June 2011 to determine who would be best suited to serve as a federal fiduciary[3] for Mr. Solze. However, Mr. Solze, via Ms. Dimitre, canceled the appointment, stating that he did not want a federal fiduciary because he had a POA in place to manage his finances. *Id.* VA rescheduled the appointment with Ms. Dimitre for July 2011, but Ms. Dimitre canceled it. VA again contacted Ms. Dimitre to reschedule the appointment, but she

---

[2] The POA states, "My alternate agent may execute and deliver an affidavit that my Agent is unwilling or unable to serve or to continue to serve and such affidavit shall be conclusive evidence insofar as third parties are concerned of the facts set forth therein, and in such event any person acting in reliance upon such affidavit shall incur no liability to me or my estate because of such reliance." There is no evidence that Ms. Dimitre has provided such an affidavit to VA or to the Court, but she did provide her mother's death certificate as exhibit B to her petition.

[3] "Federal fiduciary" is a term used by VA and defined as "a person or legal entity authorized by VA to serve as payee for the VA benefits of an incompetent beneficiary." VA Adjudication Procedures Manual Rewrite M21-1MR, Pt. XI, Ch. 2, Sec. E.

refused to do so. She wrote to VA to dispute the need for a federal fiduciary and stated that Mr. Solze was currently "very well cared for" and that he "will not personally meet with you." Pet. Ex. D. In August 2011, VA attempted to contact Ms. Dimitre, but she was unavailable. She then contacted VA and requested a letter detailing the reason for VA's phone call. VA responded with letters to Ms. Dimitre and Ms. Guillerault, requesting that they assist VA in scheduling a field examination to consider one of them as Mr. Solze's VA-appointed fiduciary. In September 2011, Ms. Dimitre wrote to VA and again stated that it was unnecessary for VA to appoint a federal fiduciary. Pet. Ex. E (stating that Ms. Dimitre had no interest in being appointed by VA as Mr. Solze's federal fiduciary).[4]

During this time, from February 2011 to September 2011, VA made monthly benefit payments to Mr. Solze until, according to the petitioners, "the payments stopped without notice." Petitioners' Aug. 28, 2012, Motion. The petitioners have informed the Court, however, that "Mr. Solze's financial welfare has been minimally affected by the Secretary's total withholding of Mr. Solze's VA benefits." Pet. at 5.[5]

On September 16, 2011, a VA field examiner recommended that VA appoint a federal fiduciary because it would be "the most practical and effective method of payment to meet the beneficiary's needs." Pet. Ex. G.[6] The field examiner also stated, "The protection of a court-appointed fiduciary is not deemed necessary for VA purposes at this time." *Id.* That same day, following the investigation required by 38 U.S.C. § 5507, VA appointed Ms. LR as the federal

---

[4] Our dissenting colleague mistakenly believes that Mr. Solze requested that Ms. Dimitre be named his *VA* fiduciary. *Post* at 11, 12. This is incorrect. The petitioners' position is *not* that Ms. Dimitre be selected by VA as Mr. Solze's federal fiduciary, but that Mr. Solze's benefits be sent directly to Ms. Dimitre with no additional oversight.

[5] Although our dissenting colleague discusses at length a recent event where Ms. Guillerault had to temporarily place Mr. Solze in a nursing home while she was hospitalized for an illness, the petitioners have consistently stated that Mr. Solze is very well cared for and is financially sound. *See also* Petitioners' Sept. 10, 2012, Motion, Ex. B (computing Mr. Solze's monthly income, excluding VA benefits, as $6,657.50).

[6] Field examiners are VA employees who are authorized to conduct investigations, called "field examinations," to examine witnesses on matters within the jurisdiction of VA, to take affidavits, to administer oaths, and to aid claimants in the preparation of claims. VA conducts field examinations in matters involving "the welfare of beneficiaries . . . who are under legal disability or in need of supervision by the Veterans Service Center Manager" (VSCM). 38 C.F.R. § 13.2 (2012).

fiduciary; the fiduciary agreed to provide services free of charge to Mr. Solze.[7] However, it does not appear that this fiduciary distributed any money on Mr. Solze's behalf.

In December 2011, VA received from the petitioners a letter that they submitted as "two Notices of Disagreement" (NOD). Pet. Ex. H. The petitioners stated that they did not dispute VA's finding that Mr. Solze was incompetent to manage his VA benefits. Instead, they disagreed first with VA's "determination that a fiduciary is 'required' in this case." *Id.* (citing 38 U.S.C. § 5502(a)(1)). In connection with this issue, they stated that VA failed to consider (or failed to provide the basis for denying) appointment of Ms. Dimitre as Mr. Solze's "third-party payee." *Id.* Second, they disagreed with VA's decision to appoint Ms. LR as the federal fiduciary. In other words, the petitioners disagreed both with VA's determination that a federal fiduciary was necessary and with VA's selection and appointment of Ms. LR.

In January 2012, the petitioners, through an attorney, sent a letter to the federal fiduciary that stated, "If the funds [currently held by the federal fiduciary] . . . are not received by [the attorney] or Ms. Dimitre within the next two weeks, [the attorney has] been authorized to file a civil action against you in Maine Superior Court." May 25, 2012, Statement of the Case (SOC). The federal fiduciary promptly resigned in February 2012.

In March 2012, VA contacted the petitioners to make an appointment for a field examination to appoint a new fiduciary. The petitioners sought information about the selection and duties of a federal fiduciary. On May 3, 2012, VA provided information to the petitioners in an e-mail, including part of the VA fiduciary agreement form.

On May 8, 2012, Mr. Solze and Ms. Dimitre filed in this Court a petition for extraordinary relief in the nature of a writ of mandamus. The petitioners stated that the precise relief sought was:

A.   A writ of mandamus ordering the Secretary to recognize the Durable Financial Power of Attorney executed by Robert L. Solze on July 13, 2001, and the relevant laws of the State of Maine.

B.   An order instructing the Secretary to provide Mr. Solze, by or through his attorney-in-fact Lois Dimitre, every dollar of the VA benefits awarded, but unpaid to Mr. Solze.

---

[7] The Secretary may authorize a fiduciary to obtain from the beneficiary's estate a commission not to exceed 4% of the benefits paid on behalf of the beneficiary to the fiduciary. *See* 38 U.S.C. § 5502(a)(2).

4

C.      An order for the immediate transfer of Petitioner Solze's present and future VA funds currently under control of the Secretary to Petitioner Dimitre as attorney-in-fact for Petitioner Solze.

D.      In the alternative, an order instructing the Secretary to produce specific and legally supported analyses as to why recognition of Mr. Solze's appointment of Ms. Dimitre as his attorney-in-fact pursuant to 38 C.F.R. §§ 13.58 and 13.59, and payment to Ms. Dimitre for the benefit of Mr. Solze as his attorney-in-fact, is not required as a matter of law.

E.      A writ of mandamus ordering the Secretary to retain a qualified accountant, independent of VA, to conduct an accounting of Mr. Solze's VA benefits from the original appointment of a federal fiduciary to the present.

F.      A writ of mandamus ordering the Secretary to make Mr. Solze whole for all costs, fees, and expenses related to this action including, but not limited to, all VA funds withheld from him, all fees and commissions paid to any fiduciary, banking charges, or any other expenses deducted from Mr. Solze's VA benefit payments.

G.      A writ of mandamus ordering the Secretary to pay the reasonable costs and attorneys fees in this matter.

H.      Any other action deemed by the Court to be in the interests of justice, the Court's authority, and the rule of law.

Pet. at 3-5.

In response to the NOD, the VA regional office (RO) issued an SOC on May 25, 2012, and a Supplemental SOC (SSOC) on July 24, 2012. The SOC set forth much of the background described above. It also stated that, due to the petitioners' failure to cooperate in a field examination and in the appointment of a fiduciary, "no fiduciary is currently serving and no benefits are being paid." The SSOC stated that VA scheduled a field examination for July 6, 2012, for the purpose of qualifying a fiduciary so benefits could be paid. Counsel for the petitioners advised petitioners to withhold cooperation and refuse to let any VA personnel into their homes. VA acquiesced and canceled the appointment. The SSOC also stated that VA attempted to qualify three individuals as fiduciaries, but upon being advised by VA that the appointment might invite legal action against them, each person refused to serve. Finally, it noted that VA would continue to withhold Mr. Solze's

5

benefit payments until it could make a determination as to who would best serve in a fiduciary capacity for Mr. Solze.

The petitioners filed a Form 9 Substantive Appeal on July 28, 2012, in which they argued that the SOC did not address certain provisions of the Code of Federal Regulations, did not explain why VA did not recommend Ms. Dimitre to serve as fiduciary, did not provide information about field examinations, did not account for the benefits that VA was withholding, and did not provide other reasons or bases for its actions.

On August 1, 2012, the Court ordered the parties to participate in a Rule 33 conference that was unsuccessful in resolving their dispute. VA certified the Substantive Appeal to the Board on September 7, 2012. The Court heard oral argument on September 12.[8] On September 24, the petitioners wrote to the Board and identified approximately 16 issues (plus additional sub-issues) for the Board to resolve.

## II. DISCUSSION

This Court has authority to issue extraordinary writs in aid of its jurisdiction, or potential jurisdiction, pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998). However, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976); *see also Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002) ("'[E]xtraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.'" (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953))). Before the Court may issue a writ, three conditions must be satisfied: (1) the petitioner must demonstrate that he lacks adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute for the appeals process; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that the issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004).

---

[8] The parties have submitted a number of motions for leave to file supplemental information, and they have attached additional documents to their various filings. In particular, on November 9, 2012, the petitioners filed a motion for leave to file supplemental information. The Court grants this motion. New evidence comes to light with each passing month.

As to the first condition, the petitioners initially argued that, "If the Secretary will not comply with the law and either provide Mr. Solze's benefits to him or take some action from which an appeal can be taken, Petitioners have nowhere else to turn." Pet. at 16. As noted above, however, shortly after the petitioners submitted their petition, the Secretary issued an SOC that expressly recognized the issues raised on appeal as the requirement to appoint a fiduciary under 38 U.S.C. § 5502 and the selection of Ms. LR as that fiduciary.

Following this development, the Court sought additional briefing as to whether the petitioners had adequate alternative means to obtain their desired relief. Order, at *2 (Aug. 1, 2012). The Court asked the parties to "specifically address, in what ways, if any, the RO's withholding of the VA benefits payments raises a matter that cannot be adequately remedied through the current appellate process following the July 2012 SSOC." Id. In their response, the petitioners stated that the RO's withholding of benefits payments "is a prohibited constitutional taking requiring this Court's immediate remedy." Petitioner's Response at 21 (Aug. 22, 2012). The petitioners did not provide any legal support for their position. The Secretary responded that the petitioners had adequate alternative means to obtain their desired relief by means of an appeal to the Board. The Secretary argues that, pursuant to Freeman v. Shinseki, 24 Vet.App. 404 (2011), the selection and appointment of a fiduciary is a matter reviewable by the Board and by this Court.[9]

Indeed, in Freeman, this Court held that a veteran "is clearly and indisputably entitled to appeal to the Board the decision of the VSCM to appoint a paid federal fiduciary," and "appeal any final adverse Board decision on this matter to the Court." Id. at 417. The Court did not hold that any dispute regarding the appointment of a federal fiduciary entitled a party to a writ of mandamus directing the Secretary to take certain actions. Although the Court did issue a writ in Freeman, it did so based on the Secretary's refusal to accept an NOD and issue an SOC, that is, on the Secretary's refusal to allow the dispute in that case to follow the traditional administrative appellate process. See id. ("[W]ithout the Court's intervention in the form of extraordinary relief, the petitioner will not be allowed to pursue his claim to the Board . . . .").

---

[9] The petitioners also cited to Freeman throughout their briefs, but they have made no specific arguments that support consideration of the petition and issuance of an All Writs Act remedy.

As in *Freeman*, the Court has traditionally only found that a petitioner lacks adequate alternative means to obtain relief where the Secretary has refused to process an appeal. For example, in *Ribaudo v. Nicholson*, 20 Vet.App. 552 (2007) (en banc), the Secretary, through the Chairman of the Board, issued a memorandum that stayed a certain class of appeals to the Board pending the Secretary's appeal to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) of a separate decision of this Court. The petitioner sought a writ of mandamus ordering the Secretary to rescind the stay. *Id.* at 553. The Court found that the Secretary's action would "prevent any appeal falling within the terms of the [Chairman's memorandum] from reaching the Court because it precludes a Board decision from being made" and concluded that the petitioner therefore lacked adequate alternative means to obtain relief. *Id.* at 555.

To the contrary, in *Erspamer v. Derwinski*, the Court found that the petitioner had "effectively exhausted any and all alternative means" to obtain relief and had endured a ten-year delay in the resolution of her appeal but declined to issue a writ of mandamus "based upon the representations of counsel for respondent [that the petitioner's appeal would soon be resolved] and in recognition of the truly extraordinary nature of the relief requested." 1 Vet.App. 3, 11 (1990).

With these cases in mind, the Court turns to the petition before it. As noted above, the petitioners filed an NOD as to the Secretary's decision to appoint a federal fiduciary and his decision to select Ms. LR as that fiduciary. The Secretary issued an SOC and SSOC discussing the facts and law pertaining to those issues. The petitioners were unsatisfied with the SOC and SSOC and perfected their appeal to the Board, and the Secretary certified that appeal. Even though part of the decision appealed from pertained to the appointment of a fiduciary who has now resigned, the Secretary has conceded that the appeal is not moot because it may still be used as a vehicle for appointing a different fiduciary. Specifically, the appeal will give the Board jurisdiction to address whether Ms. Dimitre, as holder of a POA for Mr. Solze, is entitled to the direct receipt of his benefits without an appointment by VA as a federal fiduciary. In addition, the petitioners have identified approximately 16 issues for the Board to address. As this Court stated in *Freeman*, these are matters that may be reviewed by the Board and, ultimately, by this Court. In light of these facts and the Court's decision in *Freeman*, and in the absence of any persuasive argument or authority submitted by the petitioners, the Court concludes that the petitioners have failed to establish that they have no

adequate alternative means, absent a writ of mandamus, to obtain relief as to the issue of whether Ms. Dimitre should be the recipient of her father's benefits as his fiduciary.[10]

The Court notes that it is constrained by the law and cannot act in equity. VA has acted in an expeditious manner since it issued the May 25, 2012, SOC. While the Court recognizes that the selection and appointment of fiduciaries are "new" areas of law to the extent that those decisions are now appealable by a veteran and reviewable by the Board and by this Court, the Court also expects VA and the Board to continue to proceed in a timely fashion.[11]

The Court also expresses its concern over VA's reluctance to utilize other methods by which it is authorized to distribute benefits during a dispute over the appointment of a fiduciary, namely 38 C.F.R. §§ 13.59 and 13.63. In sum, the Secretary cannot delay payment forever. Section 13.59 authorizes the Secretary to seek appointment and certification of a fiduciary appointed by a state court. And section 13.63 plainly states that payment may be made to a veteran's custodian-in-fact when payments are withheld because they may not be properly made to an existing fiduciary. The Secretary's regulations do not contemplate a time frame in which the Secretary must implement an alternative method of payment, but that time frame is certainly not unlimited. The Secretary's regulations are designed to provide him with a variety of methods by which to pay incompetent veterans their benefits in a timely fashion while reasonably safeguarding their use for the benefit of an incompetent veteran, and an unreasonable delay in the distribution of benefits raises the specter of an abuse of discretion by the Secretary.

---

[10] Our dissenting colleague expresses his concern over the Board's willingness to address "the Tenth Amendment issues raised by the conflict between Maine and Federal law." *Post* at 14-15. Neither the petitioner nor the Secretary briefed or argued any issue under the Tenth Amendment. To the extent that the petitioners' counsel addressed issues of federalism, their broad, unsupported proclamations that compliance with federal statutes and VA regulations would force Ms. Dimitre to violate Maine law are not persuasive. In addition, in discussing federal preemption, the petitioners argued that Maine law does not conflict with federal law. Petitioners' Response to August 1, 2012, Court Order at 8-15 ("Federal Law Is Not 'Supreme' In This Area.").

[11] The Court notes that the Federal Circuit's decision in *Youngman v. Shinseki*, 699 F.3d 1301 (Fed. Cir. 2012), may inform the petitioners concerning the resolution of this matter in a timely fashion.

Despite these concerns, the petitioners have provided the Court with no grounds upon which to grant the petition.[12] As discussed above, the petitioners have a clear alternative method by which to obtain the relief they seek, an appeal to the Board, which the Secretary is now processing in an expeditious manner. In addition, the Court was not persuaded that the petitioners had demonstrated a clear and indisputable right to the writ nor was the Court convinced, given the facts presented, that the issuance of the writ was warranted. Therefore, the Court will deny the petition.

Upon consideration of the foregoing, it is

ORDERED that the petitioner's November 9, 2012, Motion for Leave to File Supplemental Information is granted. It is further

ORDERED that the petition is denied.

DATED: January 4, 2013                                      PER CURIAM.

LANCE, *Judge*, dissenting in part: Although I agree with the majority that the petitioners have not established entitlement to a writ as to the issues identified by them in their July 18, 2012, VA Form 9, as those issues are properly before the Board, I strongly disagree with the majority's conclusion that the Court is without power to act to ensure that Mr. Solze receives the benefits to which he is rightfully entitled. I therefore must dissent.

## I. FACTS

Lieutenant Colonel Robert L. Solze served honorably in the U.S. Marine Corps, retiring after a career that included service in the Republic of Vietnam. *See* Petition exhibit (ex.) C; Secretary's Oct. 25, 2012, Response (Resp.) ex. 2 at 2. On July 13, 2001, Mr. Solze, recognizing that he might need help managing his affairs, executed a durable power of attorney under Maine law that granted

---

[12] Unlike our dissenting colleague, who would grant the petition and issue a writ of mandamus ordering the Secretary to pay Mr. Solze's benefits to Ms. Guillerault via 38 C.F.R. § 13.63, we are unpersuaded that the petitioners have established their right to relief under the All Writs Act, despite our sympathy for Mr. Solze and the situation he finds himself in. The Court's sympathy toward the veteran cannot substitute for the administrative appeal process made available by *Freeman*.

his agent the power to manage his finances and personal care. Petition ex. A at 2, 4. He appointed his wife, Evelyn J. Solze, herself a World War II veteran of the Marine Corps, as his agent. Petition ex. A; *Obituary of Evelyn J. Solze*, BANGOR DAILY NEWS, Aug. 22, 2001, at B7. Mr. Solze named his daughter, Lois M. Dimitre, a former delegate to the American Legion Auxiliary's Maine Girls State program, as his alternate agent. Petition ex. A; *Lois Solze is Delegate to Girls' State*, BANGOR DAILY NEWS, Jun. 18, 1973, at 14. Mrs. Solze died on August 21, 2001, and Ms. Dimitre succeeded her mother as her father's agent and attorney-in-fact pursuant to the durable power of attorney. Petition ex. B. Ms. Dimitre has managed her father's financial affairs since that time. Petition at 5.

On January 18, 2011, the Togus, Maine, VA regional office (RO) determined that Mr. Solze was presumptively entitled to service connection for ischemic heart disease due to exposure to herbicides in Vietnam. Secretary's Oct. 25, 2012, Resp. ex. 2 at 1-2. The RO awarded Mr. Solze a 100% disability rating, effective retroactively to August 16, 2010. *Id*. at 2. On April 28, 2011, after consulting with Mr. Solze, the RO determined that he was incompetent for VA purposes due to vascular dementia. Petitioner's Nov. 6, 2012, Resp. ex. A. at 2. Mr. Solze requested that Ms. Dimitre be named as his VA fiduciary. *Id*. at 5.

Mr. Solze is 90 years old, wheelchair bound, and in poor physical health, requiring round-the-clock care. *Id*.; Petitioners' Aug. 22, 2012, Resp. attachment 1 at 2; Petition ex. D at 4. He resides with his daughter, Robbi Guillerault, who provides his day-to-day care. Petition ex. E at 1. Although "Mr. Solze's financial welfare has been minimally affected" by the Secretary's withholding of his VA benefits, Petition at 5, Ms. Guillerault has indicated that she could better care for her father were those funds available, *see* Petitioner's Nov. 9, 2012, Motion attachment ("I received notification that the VA is cutting Dad's caregiver hours from 14 a week to 10.5 a week . . . . How I wish Dad's Aid and Attendance funds were available.").

Mr. Solze has suffered as a result of the Secretary's refusal to pay him the money that undisputedly belongs to him. Ms. Guillerault recently suffered a serious illness that required hospitalization, and her husband was unable to manage Mr. Solze's needs on his own. *Id*. As a result, Ms. Guillerault had no choice but to uproot her father, who is in poor physical health and suffers from dementia, from his customary environment and place him in a nursing home for several

weeks. *Id*. If Mr. Solze's disability benefits had been available, Ms. Guillerault could have instead hired an in-home caregiver, allowing Mr. Solze to remain in his home.

## II. ANALYSIS

This case presents two wholly distinct questions: first, who—to include Ms. Dimitre—should serve as Mr. Solze's fiduciary and whether VA acted properly in the appointment process; and second, whether the Court can order VA to take interim action pending resolution of the petitioners' appeal at the Board.

The parties disagree as to who should serve as Mr. Solze's fiduciary. The petitioners argue that Ms. Dimitre, by virtue of her status as Mr. Solze's attorney-in-fact pursuant to a valid Maine durable power of attorney, should be appointed as his VA fiduciary without any additional fact finding or qualification.[13] The Secretary does not argue that Ms. Dimitre should not be Mr. Solze's

---

[13] The Secretary is authorized to expedite the certification of certain types of proposed fiduciaries, including the spouse or parent of an incompetent beneficiary or a person who has been appointed a fiduciary of the beneficiary by a court of competent jurisdiction, and in cases where the amount to be managed by the fiduciary does not exceed a certain amount. 38 U.S.C. § 5507(c). As I noted in my concurrence to *Freeman v. Shinseki*, however, the statutes and regulations governing the VA fiduciary system do not currently recognize fiduciaries who serve pursuant to durable powers of attorney. 24 Vet.App. 404, 418-19 (2011) (Lance, J., concurring). A recent article discussing Mr. Solze's case states that, "[o]f all the flaws in the fiduciary program, the worst may be the VA's failure to recognize durable Powers of Attorney." Benjamin Pomerance, *A War that Must Be Won: Why Veterans Should Emerge Victorious in their Battle Against the VA's Flawed Fiduciary System*, Law Student Connection (Nov. 12, 2012, 10:47 PM), http://nysbar.com/blogs/lawstudentconnection/2012/11/a_war_that_must_be_won_why_vet_1.html.

Indeed, there is a growing consensus outside of VA that the fiduciary system is broken. In a recent interview, for example, Senator Charles Schumer observed, "'The VA fiduciary system . . . lacks sufficient oversight and is full of bad actors, needless delays, fraud and theft . . . . To put it simply, enough is enough.'" Paul Post, *Sen. Schumer Calls for Crackdown on Veterans Fraud,* SARATOGIAN, Nov. 28, 2012, http://saratogian.com/articles/2012/11/28/news/doc50b6cccf64de7908139400.txt. Similarly, Representative Bill Johnson has noted that, although "VA policy is that they prefer family members and friends to serve as fiduciaries[,] [i]t is obvious to me that this policy is just lip service and that needs to change." *Reforming VA's Flawed Fiduciary System: Hearing Before the Subcomm. on Oversight & Investigations of the H. Comm. on Veterans Affairs*, 112th Cong. (2012) (statement of Rep. Bill Johnson, Chairman, Subcomm. on Oversight & Investigations).

Congress has proposed legislation that would authorize the Secretary to make payments to individuals designated as attorneys-in-fact under a durable power of attorney. *See* H.R. 5948 § 2(a)(1), 112th Cong. (2012). House Bill 5948, which was passed by the House of Representatives but died in committee in the Senate, was intended to "enable a veteran to designate a preferred fiduciary ahead of time," and require the Secretary, if he determines that a different individual should serve as fiduciary, to present "the reason for not appointing that [predesignated] fiduciary . . . in writing." H.R. Rep. No. 112-678, at 14 (2012). These changes if made, however, may come too late for Mr. Solze and his family, given his advanced age and the fact that the legislative process must begin anew in the 113th Congress.

fiduciary, and no evidence of misfeasance has been tendered dealing with her management of Mr. Solze's affairs since 2001.  Rather, he argues only that she is required to complete the VA fiduciary certification process before she can be appointed.  The petitioners refuse to comply with VA's certification procedures, and they have perfected an appeal to the Board on the following issues:

(1)  whether VA erred by refusing to recognize Ms. Dimitre's status as Mr. Solze's attorney-in-fact;

(2)  whether VA erred in not seeking to have Ms. Dimitre appointed as Mr. Solze's guardian by a Maine State Court;

(3)  whether VA erred in failing to explain or identify what information is required in a field examination to certify a fiduciary;

(4)  whether VA violated Mr. Solze's constitutional rights by withholding his benefits and failing to provide information as to the amount being held and the funds' location; and

(5)  whether VA erred in appointing Ms. LR to serve as a fiduciary without conducting a field examination but subsequently requiring an examination to appoint Ms. Dimitre as Mr. Solze's fiduciary.

*See* Secretary's Sept. 7, 2012, Resp. attachment (Petitioners' July 18, 2012, VA Form 9).  The petitioners also submitted a brief to the Board setting out in detail the issues that they wish the Board to address.  *See* Secretary's Oct. 25, 2012, Resp. exhibit 2.

Initially, I note that I am frustrated by the failure of both parties to resolve this dispute without resort to this Court or even an appeal to the Board.  For example, either party could have initiated a protective proceeding in Maine Probate Court, *see* ME. REV. STAT. ANN. Tit. 18A, §§ 5-401, 404, and the resulting conservator would be entitled to expedited certification as a VA fiduciary.  *See* 38 U.S.C. § 5507(c); 38 C.F.R. §§ 13.55, 13.59(a) (2012).  I am perplexed as to why Ms. Dimitre did not pursue this course of action, as it is extremely likely that she would have been appointed Mr. Solze's conservator and VA should be obligated to honor that appointment.  *See* ME. REV. STAT. ANN. Tit. 18A, § 5-409 (giving preference to, inter alia, an individual nominated by the

protected person and an adult child of the protected person); 38 U.S.C. § 5507(c). Similarly, Ms. Dimitre could have simply complied with the Secretary's requests for information. *See* 38 U.S.C. § 5507(a)-(b).[14]

I am especially perplexed by the Secretary's failure to resolve this matter. The Secretary is required to act in the best interests of incompetent veterans. *See*, *e.g.*, 38 U.S.C. § 5502(a)(1). Moreover, the Secretary has a general duty to assist claimants—including, I would argue, veterans contesting fiduciary appointments. *See* 38 U.S.C. §§ 5103, 5103A. Given these statutory directives and the general nonadversarial nature of VA proceedings, the Secretary could and should have sought alternate means to ensure that Mr. Solze received his benefits, including instituting a protective proceeding in Maine Probate Court[15] or ordering interim payments to Mr. Solze's custodian-in-fact under 38 C.F.R. § 13.63, which I will discuss in further detail below.

I am also not certain that the Board is prepared to address these issues. Although several appeals from fiduciary decisions—including this one—are now pending before the Board, *see*, *e.g.*, Oral Argument, *Evans v. Shinseki*, No. 2012-7065 (Fed. Cir. Dec. 4, 2012), http://www.cafc.uscourts.gov/oral-argument-recordings, it is not clear that the Board has the authority to do anything but remand Mr. Solze's case for additional development. *See* 38 C.F.R. § 13.1 (2012) (vesting all fiduciary authority with the Veterans Service Center Manager (VSCM)). At best, it seems that the Board can review the actions of the VSCM for an abuse of discretion and vacate any decision that it determines to be erroneous. Moreover, I have serious concerns as to the Board's willingness to address the weighty constitutional questions presented by this case, including

---

[14] Contrary to the Secretary's contentions in his October 25, 2012, response, it does not appear that a field examination into *Mr. Solze's* status is necessary. *See* Secretary's Oct. 25, 2012, Response at 4. Mr. Solze's incompetency is not disputed, and so the only issue appears to be whether Ms. Dimitre is qualified to serve as his fiduciary. *Compare* 38 C.F.R. § 3.353(b)(2) (2012) (field examinations to determine incompetency) *with* 38 U.S.C. § 5507(a)-(b) (requiring an inquiry into the suitability of a proposed fiduciary).

[15] This is even more troublesome in light of the Secretary's own internal policy, which states that "[w]hen the beneficiary's VA-derived estate is sizable, or all VA benefits payable will not be used monthly and a VA-derived estate is expected to build, court appointment should be considered." M21-1MR, Part XI, Chapter 2, Section E.28.h. Mr. Solze has been assigned a 100% disability rating for ischemic heart disease, effective August 2010, which entitles him to a monthly payment of approximately $2,800. Secretary's Oct. 25, 2012, Resp. ex. 2; *Veterans Compensation Benefits Rate Tables - Effective 12/1/11*, *available at* http://www.vba.va.gov/bln/21/rates/comp01.htm. Counting both these monthly payments and a retroactive payment of $10,692, *see* Petition at 6, VA has now withheld more than $50,000 of Mr. Solze's benefits.

14

the petitioners' due process arguments and the Tenth Amendment issues raised by the conflict between Maine and Federal law.

Nevertheless, as the petitioners have chosen to appeal these issues to the Board and the Board has not yet shown itself unwilling to address them, the petitioners have not carried their burden of demonstrating that they lack adequate alternative means to obtain their desired relief. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004). I therefore agree with the majority that those issues identified on the petitioners' Form 9 are not properly the subject of a writ and concur with its denial of that portion of the petition. I disagree with the majority, however, on the issue of whether the Court can order interim action pending the Board's decision. I believe that it can—and I would hold that it must—do so to ensure that Mr. Solze receives his benefits.

Where, as here, VA has withheld payments of an incompetent veteran's benefits in the absence of a fiduciary, VA may, in the Secretary's discretion and on a temporary basis, make payments to "the person having custody and control" of the veteran. 38 U.S.C. § 5502(d); 38 C.F.R. § 13.63 (2012). In other words, section 5502(d) and § 13.63 authorize VA to release a veteran's benefits to his custodian-in-fact until a new fiduciary can be appointed or these disputes are otherwise resolved.

Mr. Solze's current situation is *precisely* the set of circumstances contemplated by section 5502(d) and § 13.63. He currently resides with his daughter, Ms. Guillerault, who cares for him and ensures that his day-to-day needs are met, *see* Petitioner's Nov. 9, 2012, Motion for Leave to File Supplemental Information. VA has withheld payment of his benefits until a new fiduciary can be appointed. Under section 5502(d) and § 13.63, VA is clearly authorized to make payments to Ms. Guillerault until a permanent fiduciary can be appointed. The Court, in its October 10, 2012, order, directed the Secretary to respond as to why § 13.63 was not applicable.

The Secretary responded to the Court's order on October 25, 2012, and proffered three reasons as to why the Court should not order payments under § 13.63. First, he argues that the question of whether § 13.63 is applicable is currently before the Board and, thus, outside the jurisdiction of the Court. Secretary's Oct. 25, 2012, Resp. at 1-2. Although he is correct that the petitioners included "Why the Secretary refuses to appoint a temporary fiduciary and provide payment under 38 C.F.R. [§] 13.63" in a September 24, 2012, letter to the Board, *see id.* exhibit 1,

15

I would hold that Mr. Solze's advanced age and VA's excessive delay in this case weigh in favor of a Court order compelling the Secretary to act pending the Board's decision.

Second, the Secretary asserts that because "payment to a custodian-in-fact is a discretionary option, if found to be in the best interest of the Veteran," the Court lacks jurisdiction in the first instance to determine whether Mr. Solze's best interests are served by such payments. *Id*. at 11. This response, however, is disingenuous. Given the Secretary's mandate to act in the best interests of a beneficiary, his failure to make payments under § 13.63 can only be viewed as a decision not to do so, which, I would hold, the Court has the authority to consider to ensure timely delivery of Mr. Solze's benefits. The alternative—that VA has, in fact, not yet made this determination—constitutes such a prolonged failure to act that it shocks the conscience and weighs in favor of the Court granting relief by ordering the Secretary to decide whether § 13.63 is applicable. *See*, *e.g.*, *Rochin v. California*, 342 U.S. 165, 172 (1952) (holding that government conduct that "shocks the conscience" violates an individual's due process rights).

Finally, the Secretary contends that payments under § 13.63 are not warranted because Ms. Guillerault "is not a party to the current matter" and has not "expressed [a] desire . . . to be certified as temporary fiduciary or to serve as temporary fiduciary." *Id*. However, given VA's statutory obligations to act in an incompetent veteran's best interest, I am mystified as to why VA has not independently suggested this course of action.[16]

In short, although § 13.63 is discretionary, "Because I don't want to" is an abuse of that discretion. VA has the *immediate* authority to make payments to Ms. Guillerault, Mr. Solze's custodian-in-fact, thereby giving him the benefits that indisputably belong to him. VA has refused to do so, arguing essentially that (a) no one asked it to, and (b) it does not have to. These arguments are spurious and reflect an attitude of arrogance and indifference. In light of VA's duty to assist and

---

[16] I am also concerned by the Secretary's assertion that the section 5507(a) and (b) certification process applies to temporary payments made to a custodian-in-fact under § 13.63. Secretary's Oct. 25, 2012, Resp. at 12; *but see* M21-1MR, Part XI, Chapter 2, Section E.28.p (requiring only a character witness to corroborate the custodian-in-fact's suitability). Requiring a custodian-in-fact to undergo the full VA fiduciary certification process seems to undercut the purpose of section 5502(d) and § 13.63, since those provisions are designed to provide an emergency alternative in the absence of an actual VA fiduciary. This is especially true given the fact that Ms. Guillerault has been taking care of her father for some time and has provided for his care without the "help" of VA.

to act in Mr. Solze's best interest, I would order VA to make payments to Ms. Guillerault under § 13.63 until a permanent fiduciary can be appointed, and therefore I must respectfully dissent.