NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARSHALL G. HILES,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2017-1247

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-617, Judge Mary J. Schoelen, Judge Margaret C. Bartley, Senior Judge Lawrence B. Hagel.

---

Decided: February 22, 2018

---

RACHEL J. ELSBY, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, argued for claimant-appellant. Also represented by JENNA PELLECCHIA, Philadelphia, PA.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also

represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD; BRIAN D. GRIFFIN, AMANDA BLACKMON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before MOORE, MAYER, and STOLL, *Circuit Judges*.

MOORE, *Circuit Judge*.

Marshall G. Hiles appeals the U.S. Court of Appeals for Veterans Claims' ("Veterans Court") denial of his appeal. Mr. Hiles is the son of decorated World War II veteran Charles D. Hiles (the "Veteran"), who honorably served our country on active duty in the U.S. Army from July 1943 to January 1946, and was awarded the Combat Infantry Badge, the Purple Heart, and the Bronze Star Medal. Because we conclude that the Veterans Court correctly denied Mr. Hiles' appeal for lack of standing to recover his deceased father's accrued benefits, we *affirm*.

Following his service, the Veteran was awarded compensation for multiple disabilities connected to his military service, including psychoneurosis. These benefits were adjusted over time, and by the start of 2006 he was receiving benefits for a disability rating of 20%. In February 2006, he requested an increase in his disability ratings. On September 27, 2006, the VA notified the Veteran by letter that pursuant to a new rating decision he was entitled to additional disability benefits accruing from at least February 2006. These are not insignificant sums. Many veterans rely on these funds to cover essential expenses. Prompt disbursement of awarded funds is the least the government can do for those who have served our country.

Here, however, the Veteran never received the additional benefits because they were withheld by the VA. In its September 2006 letter, the VA proposed a finding that the Veteran was not competent to manage his VA bene-

fits. The letter did not state the VA would withhold the additional benefits until it made a determination on competency, so Mr. Hiles and the Veteran believed the VA was in the process of calculating the additional benefits and would disburse them once calculated. Yet, without explanation, the VA did withhold the additional disability benefits it found the Veteran needed and was entitled to. Almost four months later, on January 17, 2007, the VA informed the Veteran by letter it had finished reviewing evidence about his "ability to handle [his] own financial affairs" and determined he was "not competent for VA purposes." J.A. 2099; *see also* J.A. 5. The VA stated it would withhold his additional benefits "until a fiduciary [was] assigned to handle" them. J.A. 5; J.A. 2099.

The government argued that the VA was entitled to withhold these additional disability benefits until it determined that the Veteran was competent to receive the funds or, if incompetent, until a fiduciary was appointed. Oral Arg. at 19:55–20:27; *id.* at 22:21–22:40. While the VA has statutory and regulatory processes for appointing fiduciaries to receive benefits on behalf of a beneficiary determined to be incompetent, the government could point to no statute or regulation that justifies withholding benefits *before* the VA actually makes a determination that the veteran cannot competently manage his own financial affairs. The government argued that 38 C.F.R. § 3.353(b)(2) allows the VA to withhold benefits until it makes a competency determination. Oral Arg. at 22:40–24:50. Section 3.353(b)(2), however, applies only "[w]here the beneficiary *is rated incompetent . . . .*" § 3.353(b)(2) (emphasis added). At best, it stands for the proposition that the VA can withhold benefits *after* it has determined the veteran is incompetent for VA purposes. The government admits that the Veteran was not rated incompetent until January 2007 and that the September 27, 2006 letter merely *proposed* a finding of incompetency. The government thus withheld disability benefits from the

Veteran from February 2006 until January 2007 without any rating of incompetency having occurred. There is no dispute: the Veteran was entitled to these disability benefits. Three days after issuance of the January 17 letter, however, the Veteran died, and according to the government with him went his accrued benefits.

At no point while it was withholding the disability benefits from the Veteran did the VA appoint a fiduciary. Both the Veteran and his son had repeatedly requested that the VA appoint his son, who held his power of attorney, to receive these benefits on his behalf. But the government was withholding benefits and unwilling to appoint a fiduciary until after the Veteran was rated incompetent. Thus, the Veteran never received the additional disability benefits which the VA determined he was entitled to from February 2006–January 2007 because of his possible incompetency. Inexplicably, however, the Veteran did throughout this time continue to receive his original 20% disability payments. According to the government, it ought not to award the additional disability benefits to a potentially incompetent veteran, but it can continue to award his original disability benefits to him. If the Veteran could not competently handle his newly awarded benefits, why did the VA think him competent to handle other VA benefits? Despite a lack of law or logic justifying the government's withholding of disability benefits, we must affirm.

The Veterans Court correctly denied Mr. Hiles' appeal because Mr. Hiles does not have standing to recover the Veteran's accrued benefits under 38 U.S.C. § 5121(a). We have jurisdiction over Veterans Court decisions concerning "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). We review its statutory interpretation de novo. *Hudgens v. McDonald*, 823 F.3d 630, 634 (Fed. Cir. 2016). Pursuant to § 5121(a), only certain survivors of deceased veterans may be entitled to accrued benefits.

Mr. Hiles does not dispute that he is not among those listed in § 5121(a). He therefore cannot recover his father's accrued benefits. *See Youngman v. Shinseki*, 699 F.3d 1301, 1304 (Fed. Cir. 2012) ("[T]he veteran's fiduciary does not have standing or authority to receive accrued benefits that were unpaid at the veteran's death, other than in accordance with payments as provided in 38 U.S.C. § 5121(a), to designated family members or for reimbursement of the expenses of last sickness and burial."). The Veterans Court therefore correctly denied Mr. Hiles' appeal for lack of standing.

Mr. Hiles also argues the VA's handling of the incompetency and fiduciary issues violated his father's due process rights. We are sympathetic to this argument for all the reasons discussed above. We also have no doubt that the Veteran had a due process interest in his accrued benefits. The VA determined he was entitled to an increase in benefits, and it is "well established that disability benefits are a protected property interest and may not be discontinued without due process of law." *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009); *see also id.* at 1298. Yet even if Mr. Hiles were found to have been his father's fiduciary and had standing to bring this due process claim on behalf of his deceased father, he would not be able to recover his father's accrued benefits because that property interest was statutorily extinguished at the Veteran's death. *See Youngman*, 699 F.3d at 1304 (holding that because the veteran "died without any heirs in the categories qualifying under § 5121, his unpaid benefits died with him"). Indeed, at oral argument, counsel for Mr. Hiles conceded the monetary remedy underlying the due process claim would be based on the Veteran's accrued benefits. Oral Arg. at 8:24–9:48. We have considered Mr. Hiles' remaining arguments and find them unpersuasive. Thus, even if the government wrongfully withheld the Veteran's disability benefits, these are accrued benefits, and Mr. Hiles does not qualify under the

statute to receive them after the Veteran's death.  Accordingly, we affirm the Veterans Court's denial of Mr. Hiles' appeal.

## CONCLUSION

For the foregoing reasons, the decision of the Veterans Court is *affirmed*.

## **AFFIRMED**

### COSTS

No costs.